<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CONNIE MORTON and ROY MORTON, her husband,** | **Civil Action No. 18-14506 (WJM)** |
| **Plaintiffs**, | |
| **v.** | |
| **BIOMET, INC.; BIOMET ORTHOPEDICS, LLC; BIOMET U.S. RECONSTRUCTION, LLC; BIOMET MANUFACTURING, LLC; ZIMMER BIOMET HOLDINGS, INC.; BIOMET FAIR LAWN, LLC; STEPHEN R. DAVIS; AND LEGACY ORTHOPEDICS, INC.,** | <u>**REPORT AND RECOMMENDATION**</u> |
| **Defendants.** | |

<u>**Falk, U.S.M.J.**</u>

Before the Court is Plaintiffs' motion to remand this case to state court.  [CM/ECF No. 12.]  The motion is opposed.  The Court decides it on the papers. Fed.R.Civ.P. 78.  For the reasons set forth below, it is respectfully recommended that Plaintiffs' motion to remand be **granted**.

## BACKGROUND

Plaintiffs Connie Morton ("Plaintiff") and Roy Morton (collectively "Plaintiffs"), husband and wife, are citizens of Pennsylvania. (Compl.) Five of the eight defendants—Biomet Inc., Biomet Orthopedics, LLC, Biomet U.S. Reconstruction, LLC, Biomet Manufacturing, LLC, and Zimmer Biomet Holdings, Inc. ("Biomet Defendants")—are either citizens of Indiana, Delaware, or both states. (Notice of Removal ¶¶ 6-11.) The citizenship of Defendant Biomet Fair Lawn LLC ("Fair Lawn") is disputed.[1] Legacy Orthopedics, Inc. ("Legacy") and Stephen R. Davis ("Davis") are both citizens of New Jersey. (Compl. ¶¶ 7,11.)

This is a product liability action involving an artificial hip implant. According to Plaintiffs, the Biomet Defendants design, manufacture, and sell a metal hip replacement system known as Biomet Magnum Metal on Metal Hip Replacement System ("Magnum hip replacement" or "hip replacement system"). Fair Lawn allegedly cast components for the hip replacement system which, according to Plaintiffs, did not meet specifications. (Compl. ¶ 5.) Plaintiffs allege that Davis was the exclusive distributor of the Magnum hip replacement in New Jersey from July 1987 until October 2010; Legacy became the exclusive distributor in October 2010. (Compl. ¶¶ 8, 10.) On March 12, 2009, Plaintiff

---

[1] Plaintiffs appear to suggest that Fairlawn is a citizen of New Jersey for jurisdictional purposes, alleging that it has "its principal place of business" and "owns and operates a casting operation" in the state. (Compl. ¶ 5; Pl.'s Br. at 1.) Defendants state in their Notice of Removal that Fair Lawn, a limited liability company, is a citizen of Indiana because its sole member, Biomet Inc., is an Indiana corporation. (Notice of Removal; Declaration of Mark Moudy attached thereto at ¶¶ 1, 4; Def.'s Br. at 4.) Defendants argue that even if Fair Lawn were a citizen of New Jersey, it has been fraudulently joined to defeat diversity jurisdiction and therefore its citizenship should be disregarded in the jurisdictional analysis. (Notice of Removal ¶ 13; Def.'s Br. 4-6.)

was implanted with a Magnum hip replacement. (Compl. ¶ 116.)  According to Plaintiff, during the seven years following implantation, the Magnum hip replacement continuously released toxic heavy metals into her body, gradually poisoning her.  (Id. at ¶ 117.)

Plaintiffs commenced this action on August 23, 2018, in the Superior Court of New Jersey.  Plaintiffs' five-count Complaint asserted two claims (failure to warn and manufacturing and design defect) under the New Jersey Products Liability Act ("NJPLA"), N.J.S.A. § 2A:58C-1 et seq., common law fraud, breach of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, and a per quod claim by Plaintiff Roy Morton.  On October 1, 2018, all Defendants removed the case based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Notice of Removal.)  In so doing, Defendants stated that the forum defendant rule,[2] which precludes an in-state defendant from removing a case, did not bar removal because Legacy and Davis—the "New Jersey defendants"[3]— were fraudulently joined.  Plaintiffs moved to remand on October 31, 2018.  Denying the New Jersey defendants were fraudulently joined for the purpose of defeating jurisdiction, Plaintiffs argue that the claims asserted against them are genuine claims upon which Plaintiffs may be entitled to relief.  Noting that it is Defendants' burden to establish fraudulent joinder, Plaintiffs also argue that Defendants have failed to satisfy their burden here.

---

[2] 28 U.S.C. § 1441(b)(2).

[3] As noted in footnote no. 1 supra, the parties dispute the citizenship of Fairlawn in their briefing.  The Court need not reach the question of Fair Lawn's citizenship in order to decide the motion before it and makes no ruling on the issue.

## DISCUSSION

### A. Removal Standard

The federal removal statute provides that "[e]xcept as otherwise provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007).

The allegations of a complaint are assumed true for purposes of a motion to remand. See Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) ("Ruling on whether an action should be remanded…, the district court must assume as true all factual allegations of the complaint.") A district court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties about the current state of controlling substantive law in favor of the plaintiff." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Removal statutes are strictly construed against removal and all doubts are resolved in favor of remand. See Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004); Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992).

Where federal jurisdiction is premised only on diversity of the parties, the forum defendant rule applies. Encompass Ins. Co. v. Stone Manion Restaurant Inc., 902 F.3d

147, 152 (3d Cir. 2018).  The rule provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may <u>not</u> be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  <u>Id.</u> (quoting 28 U.S.C. § 1441(b)(2) (emphasis added)).

## B.  <u>Fraudulent Joinder Standard</u>

The burden of establishing fraudulent joinder is heavy.  <u>Batoff</u>, 977 F.2d at 851 (citations omitted).  In conducting a fraudulent joinder analysis, all factual allegations in the complaint are assumed to be true.  <u>See</u> <u>Steel Valley</u>, 809 F.2d at 1010. The court must resolve all contested factual issues and any uncertainties in the law in favor of the plaintiff.  <u>Batoff</u>, 977 F.2d at 852; <u>Boyer</u>, 913 F.2d at 111.  Joinder is considered fraudulent only when "there is no reasonable basis in fact or colorable ground supporting the claim" in dispute. <u>Batoff</u>, 977 F.2d at 851.  For a claim to lack a colorable basis, "it must be wholly insubstantial and frivolous."  <u>Id.</u> at 852.

A court may look beyond the pleadings "to identify indicia of fraudulent joinder." <u>In re Briscoe</u>, 448 F.3d 201, 219 (3d Cir. 2006).  However, fraudulent joinder is not meant to substitute for a merits analysis.  <u>See id.</u> at 219 (quotation omitted) ("court must not step 'from the threshold jurisdictional issue into a decision on the merits'").  Indeed, "the inquiry into the validity of the complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder." <u>Batoff</u>, 977 F.2d at 852.  Accordingly, "[i]f there is even a possibility that a state court would find that the complaint states a cause of

action . . . the federal court must find that joinder was proper and remand the case to state court." <u>Boyer</u>, 913 F.2d at 111 (quotation omitted).

### C.  <u>Analysis</u>

Defendants have the burden of showing that this case is properly before the Court. <u>See</u> <u>Frederico</u>, 507 F.3d at 193.  To do so, Defendants must demonstrate that *both* Legacy and Davis were fraudulently joined.  If either of the New Jersey defendants was not fraudulently joined, the forum defendant rule bars removal from the state court to this Court.  Stated another way, if a single claim against either Legacy or Davis is not wholly frivolous on its face, then removal was improper, and the case should be remanded.  For the reasons stated below, Defendants have failed to carry this heavy burden.

The doctrine of fraudulent joinder is intended to address patently frivolous claims, such as actions clearly barred by the statute of limitations. <u>See</u> <u>In re Briscoe</u>, 448 F.3d at 223-24 (fraudulent joinder applies to claims barred by statutes of limitations).  This is simply not the type of issue presented here.  The Complaint asserts claims against Legacy and Davis for, among other things, failure to warn under the NJPLA, as well as claims for fraud under common law and the CFA.  The thrust of Defendants' argument is that none of Plaintiffs' claims against Legacy or Davis are colorable because each claim is precluded by the NJPLA.  (Def.'s Br. at 7.)  Defendants maintain that the NJPLA provides a complete defense to product sellers such as Davis and Legacy from strict liability product defect claims subject to certain exceptions which, according to

Defendants, do not exist here.[4] (Def.'s Br. at 7-8.)  Defendants also contend that

Plaintiffs' fraud claims are subsumed by the NJPLA.  (Def.'s Br. at 8-9.)  Defendants

urge the Court to conclude that because Plaintiffs would not succeed in their claims

against the New Jersey defendants, Davis and Legacy must have been fraudulently

joined by Plaintiffs to preclude removal of the action.  Thus, Defendants contend that

the citizenship of Davis and Legacy should be disregarded in the jurisdictional analysis.

      Whether Plaintiffs have viable claims under the NJPLA against Davis and

Legacy as sellers of the allegedly defective product or whether the claims of fraud

asserted against them are subsumed by the NJPLA are fairly complex issues that would

depend upon the facts developed in discovery and a thorough analysis of substantive

state law.  That is not something the Court can or should do on a fraudulent joinder

analysis.  These are not the type of issues contemplated in a fraudulent joinder analysis

where clear frivolousness must be shown by Defendants.  Despite the fact the NJPLA

provides a mechanism for sellers to avoid liability, Davis and Legacy may still be liable

if they fall into an exception to NJPLA's defense to product sellers.  For instance, a

seller may not escape from liability if he "knew or should have known of the defect in

the product," —a fact that can only be established in discovery.  N.J.S.A. 2A:58C-9(d);

see Fidelity and Guar. Ins. Underwrites, Inc. v. Omega Flex, Inc., 936 F.Supp.2d 441,

454 (D.N.J. Mar. 2013). A product seller seeking immunity under the NJPLA bears the

---

[4] Davis and Legacy have certified that the manufacturer of the Magnum hip replacement at issue in this case is Biomet Orthopedics, LLC.  (See CM/ECF No. 1-2, Affidavit of Rolf Klein, at ¶ 12.)  Having supplied such a certification, Defendants maintain that Davis and Legacy are statutorily relieved of strict liability as a matter of law. See N.J.S.A. 2A:58C-9(b).

burden of demonstrating that it does not fit into any of the exceptions to seller immunity set forth in the statute.  See DeGennaro v. Rally Mfg. Inc., No. 09-443, 2011 WL 5248153, at *8 (D.N.J. Nov. 2, 2011); Bashir v. Home Depot, 2011 WL 3625707, *4 (D.N.J. Aug. 16, 2011). Courts considering whether a seller is immune from liability under the statute "overwhelmingly address the merits of potential seller immunity at the summary judgment stage of the proceedings" rather than on a dispositive motion filed at the outset of the proceedings, and certainly not in a fraudulent joinder context.  Fidelity, 936 F.Supp.2d at 453.

Here, Plaintiffs have asserted overwhelming facts which, if proven, arguably would render Davis and Legacy liable for Plaintiffs' injuries.  For instance, Plaintiffs allege:

> [Davis] was responsible for educating orthopedic surgeons about Biomet hip replacement systems and the advantages, benefits, indications, . . . surgical implantation, . . . and addressing any post-surgical questions or concerns . . . . (Compl. ¶ 9.)

> [Davis and Legacy] selected the components and tools to have present in the operating room when [Plaintiff] was surgically implanted with the [Magnum hip replacement].  (Compl. ¶ 14.)

> Defendants failed to inform physicians and patients in the United States of a [study that] discouraged use of [ ] Magnum hip replace-ments, the need for physicians to screen their patients for [a]dverse [r]eaction to [m]etal [d]ebris, and instead continued to promote the Magnum for implantation into the bodies of patients in the United States.  (Compl. ¶ 76.)

> Defendants have failed to disclose to orthopedic surgeons or the public in the United States that the Magnum hip replacement was recalled in Australia and that the Australian government issued a "Hazard Alert" regarding the Magnum.  (Compl. ¶ 94.)

It is abundantly evident from these allegations, among many others in the

Complaint, that Plaintiffs' claims are not clearly frivolous.  Liability, however, may ultimately rise or fall on facts developed during discovery, including what, if any, information Davis and Legacy knew about the alleged dangers of metal on metal hip replacements like the one at issue here.  See Fidelity, 936 F.Supp.2d at 454. (denying a motion to dismiss, court found plaintiff was entitled to conduct discovery to establish seller's knowledge of alleged defect).  This appears quite conceivable here since the New Jersey parties are the longtime exclusive distributors of a highly specialized product rather than a large retail department store that sells thousands of products. (Note the detailed, specific allegations of the Complaint.)  Such an inquiry is well beyond the scope of review for fraudulent joinder. See Miloseska, No. 12-6108, 2012 WL 6771978 at *4, n. 4 (D.N.J. Dec. 20, 2012) (citing Briscoe, 448 F.3d at 217-18).  And as said previously, Plaintiffs' detailed allegations must be accepted as true.  By arguing that Plaintiffs' claims essentially are barred as a matter of law, Defendants are presenting a merits-based argument that is only appropriate on a motion for summary judgment.

The Court concludes that Plaintiff acted reasonably by naming all the parties who may be responsible for her injuries, as failure to do so could give rise to a potential statute of limitations issue. See Romeo v. JC Penney, No. 11-3727, 2011 WL 5513203 (D.N.J. Nov. 10, 2011).   It is more than conceivable that a state court could find that Davis and Legacy are liable under the NJPLA.  The Complaint clearly states specific facts and causes of action against them upon which relief can be granted.  Thus, the Court concludes that, in light of the allegations set forth in the Complaint, the claims asserted against the New Jersey defendants are not wholly insubstantial or

frivolous. See Batoff, 977 F.2d at 851.

It is not necessary to address in detail Defendants' argument that the CFA claims against the New Jersey defendants are "subsumed" by the NJPLA because the product liability claims are so plainly not frivolous. Although the Court believes that most of the CFA claims probably are subsumed, it is not necessarily a simple issue. From the Court's experience, this issue is often vigorously disputed in dispositive motion practice. Indeed, there are decisions which take different positions depending on the facts. Once again, this analysis is not the basis for a fraudulent joinder analysis.

## DECISION

The Court finds that Plaintiffs raised "colorable" claims against Davis and Legacy. Defendants have not carried their heavy burden of demonstrating that the New Jersey defendants have been fraudulently joined. Therefore, removal was barred by the forum-defendant rule and the Court does not have diversity jurisdiction over this case.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion to remand be granted.

    s/Mark Falk                  
**MARK FALK**
**United States Magistrate Judge**

**Dated: April 9, 2019**